UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IVAN NEATHERY**, individually and as a shareholder of Meridian Bank, **FEDERAL DEPOSIT INSURANCE CORPORATION**, as receiver for Meridian Bank,<br><br>       Plaintiffs,<br><br>       v.<br><br>**BRAD RENCH**, individually and as the President of Meridian Bank, **CLAY WINFIELD**, individually and as a member of the Board of Directors of Meridian Bank, **TIMOTHY KEISER**, individually and as a member of the Board of Directors of Meridian Bank,<br><br>       Defendants. | Case No. No. 09-cv-631-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Brad Rench's (hereinafter "Rench") Motion to Dismiss (Doc. 23). Plaintiff Ivan Neathery (hereinafter "Neathery") filed a Response (Doc. 23) thereto. Defendant Clay Winfield (hereinafter "Winfield"), acting *pro se*, also filed a Motion to Dismiss (Doc. 32) that incorporated Rench's dismissal motion, to which Neathery also filed a Response (Doc. 38).

For the following reasons, the Court **GRANTS** the instant motions.

1

## BACKGROUND

As a preliminary matter, the Court notes that Defendants' motions again fail to specify a rule under which they are filed. Nevertheless, the Court assumes that the motions to dismiss are for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I. Facts**

For motions made under Federal Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Court, accepting all of Neathery's factual allegations as true and drawing all reasonable inferences in his favor, finds as follows:

Rench, the president of Meridian Bank, and Winfield and Timothy Keiser (hereinafter "Keiser"), members of the board of directors of Meridian Bank, allowed Meridian Bank to extend loans to themselves to purchase real estate subject to lower interest rates than they would receive with any other bank. These individuals were able to extend these loans by fraudulently pledging security. Further, the trio caused Meridian Bank to purchase real estate at an amount more than five times the amount of the fair market value. These individuals abused their respective positions and inside information and engaged in conduct that benefitted them on a personal basis, to the detriment of Meridian Bank and its shareholders.

Defendants also provided fictitious information to Neathery, an individual shareholder of Meridian Bank, regarding the financial state of the bank, its lending policies and procedures, and

its operational policies and procedures. They represented there would be no self dealing or mismanagement of capital. Defendants represented to him that his shareholder voting rights would not be affected by the actions, inactions or conduct of the board or officers of the bank. In reliance on these representations, Neathery bought shares of stock.

On October 10, 2008, the director of the Illinois Department of Financial and Professional Regulation, Division of Banking, closed Meridian Bank and appointed the Federal Deposit Insurance Corporation (hereinafter "FDIC") as its receiver. The FDIC accepted its appointment and thereafter succeeded to all rights, titles, and powers and privileges of Meridian Bank pursuant to 12 U.S.C. § 1821 (c)(3)(A), including the right to bring a derivative claim against the corporation. (*See* Doc. 2, Exh. B). Neathery, an individual shareholder of Meridian Bank, did not receive notice of the receivership prior to filing his complaint in this case.

## II. Relevant Procedural Posture

On May 28, 2009, Neathery filed a six-count Complaint (Doc. 2, Exh. C.) in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, seeking recovery for alleged misconduct by Rench, Winfield, Keiser and Meridian Bank. On August 18, 2009, FDIC filed a notice of substitution of parties in order to substitute the FDIC for Meridian Bank. On August 19, 2009, FDIC timely removed the state court action to this Court. (Doc. 2). On February 25, 2010, the Court granted in part and denied in part FDIC and Rench's first Motions to Dismiss (Docs. 10, 11). (*See* Doc. 21). Specifically, the Court granted said motions insofar as they sought dismissal of Neathery with prejudice from bringing Count I, alleging a shareholder derivative claim, and Count II, alleging a shareholder derivative claim of waste of corporate assets. The Court directed the Clerk of Court to substitute FDIC for Neathery as to said counts, thereby adding FDIC as a plaintiff and terminating FDIC as a defendant in this matter. However,

Neathery's status as plaintiff continued as to Counts III through V, alleging individual violations of The Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "ICFDBPA"), and Count VI, alleging civil conspiracy. The Court granted Neathery leave to amend his complaint without Count I or Count II or any new counts. The Court reasoned that if Neathery was given leave to amend, he could potentially demonstrate that he suffered from an individual injury other than the devaluation of stock based on the conduct of the Defendants, thereby stating a claim for which relief can be granted. On March 19, 2010, Neathery filed his First Amended Complaint (Doc. 22), and the instant motions were brought thereafter that target the remaining claims.[1]

## ANALYSIS

### I. Fraud Pleading Generally

Federal Rule of Civil Procedure 9(b) requires allegations of fraud or mistake to be plead with particularity by including "the who, what, when, where and how."[2] *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.,* 536 F.3d 663, 669 (7th Cir.2008). The intent of Rule 9(b), with respect to fraud claims, "is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual." *Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 748-49 (7th Cir. 2005). Further, "[b]ecause only a fraction of financial deteriorations reflects fraud . . . plaintiffs in securities cases must provide enough information about the underlying facts to distinguish their claims from those of disgruntled investors." *Arazie v. Mullane*, 2 F.3d 1456, 1458 (7th Cir. 1993)

---

[1] Although the instant motions did not attack Neathery's claim against Keiser, the Court dismissed Keiser without prejudice upon motion for voluntary dismissal by Neathery. (*See* Doc. 41).

[2] In its Memorandum and Order (Doc. 21) relating to Defendants' original dismissal motions, the Court confined its discussion of pleading standards to Federal Rule of Civil Procedure 8. The Court was mindful of its original oversight of Federal Rule 9(b) in considering the instant motions; however, as discussed *infra*, Neathery's failure to meet the 9(b) standard is inapposite given his general inability to cite a sufficient injury underlying his claims.

**II. The Illinois Consumer Fraud and Deceptive Business Practices Act As It Relates to Federal Rule 9(b)**

In the operative complaint, Neathery alleges the Defendants violated the ICFDBPA, specifically fraud in the inducement. The ICFDBPA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). The Illinois Supreme Court has declared that "in order to prove a private cause of action of the ICFDBA, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.* 835 N.E.2d 801, 850 (Ill. 2005.)

The Seventh Circuit has provided further guidance regarding pleading standards under the Act. "Because neither fraud nor mistake is an element of *unfair conduct* under the Illinois Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City* 536 F.3d at 670 (emphasis added). Put another way, when *fraud* is alleged in a complaint under the Act, the particularity requirement of Rule 9(b) *must be met* in the pleadings.

Because Neathery's complaint sounds in fraud, he must plead the allegations with particularity. "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and the content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* F.3d 771, 777 (7th Cir 1994). For example, in *BPI Energy Holdings, Inc. v.*

5

*IEC (Montgomery)* LLC., No. 07-CV-186-DRH, 2010 WL 331732, at *3 (S.D. Ill. Jan. 26, 2010), where the court found the plaintiffs pled with sufficient particularity to survive a motion to dismiss based on a Rule 9(b) challenge, the plaintiffs' allegations specified various legal documents and contracts, provided terms allegedly promised and described the circumstances showing why plaintiffs believed defendants never intended to honor contractual agreements.

The instant complaint reveals who allegedly engaged in the fraudulent acts, but its particularity ends there. Neathery asserts the Defendants provided fictitious information about the bank's finances, policies and procedures, but he fails to provide any specific contents of those misrepresentations or how such communications were represented to him. Further, the time and place of the alleged fraudulent acts are not present in the complaint. Just as the *Arazie* Court said, plaintiffs in securities cases must provide a sufficient amount of information regarding the essential facts to distinguish their claims from those of angry investors. As such, Neathery's complaint fails to plead fraud with the heightened particularity required by Rule 9(b). If this were the end of the Court's analysis, it would dismiss the complaint without prejudice and allow Neathery leave to demonstrate the necessary particularities as required in Rule 9(b). However, he still fails to show an individual injury.

## III. Neathery Fails to State a Distinct Personal Injury

Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name. Injury to the corporation does not, however, prevent suit by an investor who suffers a distinct personal injury. *Frank v. Hadesman and Frank, Inc*. 83 F.3d 158, 159 (7th Cir. 1996). The established tenet is, "[w]here there is no showing that a plaintiff himself had been injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation and a stockholder may not seek relief on his own behalf."

*Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 432 (7th Cir. 1988). The question is whether the pleading states an injury to the plaintiff that is an individual claim and is distinguished from the injury which indirectly affects the shareholders as a whole. *Hunter*, 844 F.2d at 432. A finding that there was an injury to the corporation and the individual does not preclude a finding that the claim was non-derivative in nature. *Id.* Neathery cites two exceptions to the non-derivative requirement, fraud in the inducement and loss of voting rights.

The Ninth Circuit previously declared that a claim sufficiently alleges an individual injury when the shareholder was fraudulently induced to purchase stock. *Pareto v. Fed. Deposit Ins. Corp*, 139 F.3d 699,700 (9th *Cir.* 1998*).* The shareholder must show, however, that the fraudulent inducement caused more harm than just devaluation in order to bring an individual suit. *Id.* at 700. This is because the devaluation of stock is an indirect injury to the shareholders caused by a direct injury to the corporation and thus is derivative in nature. *Id.* In *Pareto,* where former stockholders of a bank brought court action against the bank's former directors alleging violations of duties of care and loyalty, the court said no individual injury occurred where the "only injury from those misrepresentations was the devaluation of his stock . . . [b]ut that is an injury that fell on every stockholder, majority and minority alike, and fell on each on a per share basis." *Id.*

Here, Neathery asserts fraudulent inducement as an individual claim but does not sufficiently explain how the fraud resulted in an injury other than the devaluation of the stock. Neathery maintains that the Defendants engaged in misconduct that was detrimental to his interest, including his voting rights, but provides no further factual information regarding what individual injury was sustained. Assuming *arguendo* that the injury sustained was to Neathery's voting rights, a review all of the factual information in the complaint with respect to the

7

fraudulent misconduct provides a tenuous connection between the claims of unlawful conduct and practices and an individual injury affecting Neathery's voting rights. As in *Pareto*, the only injury the Court can discern here is a devaluation of Neathery's investment.

Neathery further asserts an individual claim exists because the Defendants failed to inform or otherwise ensure he had notification of any corporate meetings in which plaintiff's voting rights could be asserted.

In *Spillyards v. Abboud,* 662 N.E.2d 1358 (Ill. App. Ct. 1996), where plaintiffs alleged defendant entered in to an agreement to sell 18.3% of common stock to an entity in return for that entity voting its block of shares for the director nominees of defendant, the court found plaintiffs' claims based on vote dilution were individual in nature. *Id* at 1364. That court said "[t]he right of the shareholders to elect a board of directors *without unfair manipulation* is an individual contractual right and does not become a claim of the corporation merely by the fact that all shareholders have been equally affected." *Id.* (emphasis added) (citing *Avacus Partners, L.P. v. Brian*, No. 11001, 1990 WL 161909, at *6 (Del. Ch. Oct. 24, 1990)).

Here, the Court first notes that *Spillyards* is persuasive but not binding precedent for this Court. Nevertheless, the Court finds very little analogous to the factual circumstances in *Spillyards*. That case hinged on unfair manipulation as it relates to voting rights and no such claim exists here. In *Spillyards*, the defendants were alleged to have manipulated a large block of shareholder votes in order to elect their preferred nominees, thereby reducing the voting power of the remaining individual shareholder's votes. Meanwhile, Neathery's claim asserts he was not informed of corporate meetings where his vote could protect his interests and curtail the Defendants' misconduct. Not only is Neathery's loss of voting rights claim dissimilar to *Spillyards*, the Court finds it unreasonable to infer that Neathery was the sole shareholder

8

intentionally prevented from participating in the shareholder voting process. Further, the complaint fails to provide any facts supporting the claim.

In granting Neathery leave to amend his original complaint the Court provided him the opportunity to amend and demonstrate that he suffered from an individual injury, based on the conduct of the board of directors, other than the devaluation of stock. A complaint should not be dismissed with prejudice and without leave to amend unless it is clear that an amended complaint would still fail to state a claim upon which relief could be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). In the instant complaint, as in the original complaint, Neathery has failed to demonstrate that he suffered an individual injury other than the devaluation of his stock. To grant leave to amend this complaint would therefore be futile.

## IV. Civil Conspiracy Fails Absent an Unlawful Underlying Act

Civil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Smith v. Eli Lilly & Co.* 560 N.E. 2d. 324, 329 (Ill. 1990); *see also Reuter v. Mastercard Int'l, Inc.,* 921 N.E.2d 1205, 1216 (Ill. App. Ct. 2010). Conspiracy and breach of fiduciary duty claims are not actionable absent an unlawful underlying act. *Kern v. Arlington Ridge Pathology, S.C.,* 893 N.E. 2d 999, 1009 (Ill. App. Ct. 2008).

Here, since the Court failed to find an actionable claim of fraud in the instant complaint, the claims of civil conspiracy against Rench and Winfield are also non-actionable and must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons the Court **GRANTS** Rench's Motion to Dismiss (Doc 23) and Winfield's Motion to Dismiss (Doc. 32), thereby **DISMISSING** Neathery's claims against Rench and Winfield **with prejudice.**  The Court **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**
**Dated: July 15, 2010**                                                          s/ J. Phil Gilbert
                                                                                  **J. PHIL GILBERT**
                                                                                  **DISTRICT JUDGE**